UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br><br>v.<br><br>**LARRY MITCHELL**,<br><br>Defendant. | 4:13-cr-20468<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Larry Mitchell suffers from three of the recognized medical conditions that make a person more susceptible to contracting a dangerous case of Covid-19: Type 2 diabetes, hypertension, and obesity. He has less than a year of his sentence remaining and seeks compassionate release under 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, or, in the alternative, transfer to home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES"), Pub. L. 116-135, 134 Stat. 281, § 12003(b)(2). Mitchell pled guilty in 2013 to possession with intent to distribute more than 28 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). He was sentenced to 108 months in prison and both parties agree that his current release date is July 8, 2021. The government concedes there are "extraordinary and compelling reasons" to reduce Mitchell's sentence under the First Step Act, but

1

opposes release based on the belief that Mitchell presents a danger to the community and that the sentencing factors set forth in 18 U.S.C. § 3553(a), as well as applicable policy statements issued by the Sentencing Commission, weigh against granting early release. Having carefully considered the question, the Court disagrees and will grant Mitchell's motion for compassionate release. He will be released after he completes the required 14-day quarantine.

## BACKGROUND

Mitchell is currently incarcerated at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"). In 2013, he pled guilty to possession with intent to distribute more than 28 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). ECF No. 23, PageID.50 (Plea Agreement). The parties disagreed on the question of whether Mitchell possessed a firearm in connection with the offense. *See* ECF No. 60, PageID.557 (Gov't Resp. Br.). Accordingly, the government calculated Mitchell's Sentencing Guidelines range as 87 to 108 months while defense counsel urged that the applicable Guidelines range was 70 to 87 months. ECF No. 23, PageID.51.

The Probation Department's Presentence Investigation Report determined that Mitchell was a career offender under § 4B1.1[1], raising

---

[1] The two prior felony convictions that resulted in Mitchell being classified as a career offender were for fleeing and eluding the police in the third degree, Mich. Comp. Laws § 257.602a(1), and delivery of marijuana, Mich. Comp. Laws § 333.7401. PSR, p. 18.

2

his potential Guidelines range to 188 to 235 months. But the plea agreement was limited to 108 months and this Court applied a downward departure from the criminal-history calculation applicable to certain defendants categorized as career offenders. *See* U.S.S.G. § 4A1.3(3); PSR, p. 18; F No. 41, PageID.223 (Sentencing Tr.). This effectively lowered Mitchell's Guidelines range back down to the 87 to 108 range presented by the government. ECF No. 41, PageID.223.

The Court ultimately imposed a sentence of 108 months, well below the potentially applicable Guidelines range of 188 to 235 months, in part because it found that Mitchell's criminal history was "distinguishable . . . from those violent crimes that are intentional violent crimes such as assaultive behavior or trying to murder someone."[2] ECF No. 41, PageID.222; ECF No. 25, PageID.68 (Judgment). The Court further supported its decision for a downward departure by explaining that the applicable Guidelines range "overrepresent[s] the seriousness of the criminal history here and also the likelihood of the defendant to commit serious criminal offenses." ECF No. 41, PageID.222.

In his motion for compassionate release, Mitchell, who is 43 years old, explains that he suffers from several health problems, including Type 2 diabetes, hypertension, and obesity, as well as high cholesterol. ECF

---

[2] The Court applied a downward departure from the criminal-history calculation provided for by U.S.S.G. § 4A1.3(3), which is applicable to certain defendants categorized as career offenders, thereby effectively lowering the applicable Guidelines to the 87 to 108 range presented by the government. ECF No. 41, PageID.223.

No. 64, PageID.606. These diagnoses are documented in the BOP's medical records. *See* ECF No. 69-6, PageID.642. The Centers for Disease Control have identified Type 2 diabetes as potential comorbidity that places "[p]eople of any age . . . at increased risk of severe illness from COVID-19." *People of Any Age with Underlying Medical Conditions*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. Hypertension, which Mitchell also suffers from, is listed as an underlying health problem that "might" put affected individuals at a higher risk of contracting serious illness because of the virus. *Id.* Of the individuals who have been hospitalized for Covid-19 in the United States, 49 percent had preexisting hypertension and 48 percent were obese. Michael Pollan, *The Sickness in Our Food Supply*, N.Y. REV. OF BOOKS, June 11, 2020. *See also United States v. Sanders*, No. 2:19-cr-20288, 2020 WL 2320094, at \*5–6 (E.D. Mich. May 11, 2020) (summarizing scientific studies identifying hypertension as a Covid-19 risk factor).

As for the Covid-19 situation at Mitchell's place of incarceration, FCI Terre Haute has three diagnosed cases of Covid-19, according to BOP statistics as of the date of this Order. *COVID-19 Cases*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp. The government, in its response brief, describes precautions the Bureau of Prisons is taking

4

to limit the spread of Covid-19 in federal prisons, including FCI Terre Haute. ECF No. 70, PageID.646–48 (Gov't Resp. Br.).

## DISCUSSION

The circumstances in which a sentencing court may "modify a term of imprisonment once it has been imposed" are limited by 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018. Courts can modify a sentence only upon motion by the Director of the Bureau of Prisons ("BOP"), or upon motion by the defendant. After a defendant has exhausted his administrative remedies with the BOP, the sentencing court may reduce the term of imprisonment if it determines that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also take into account the sentencing factors set forth in 18 U.S.C. § 3553(a) and assess whether a sentence reduction "is consistent with applicable statements issued by the Sentencing Commission." *Id.*

Here, the Court finds that Mitchell's preexisting health conditions—when considered in light of the pandemic and conditions of incarceration—present "extraordinary and compelling reasons" warranting reduction of his sentence to time served. None of the other factors this Court is bound to consider weigh strongly against ordering Mitchell's release. Accordingly, the motion for compassionate release will be granted.

### A. Mitchell has properly exhausted his administrative remedies.

Because Mitchell has already exhausted his administrative remedies with the BOP, his motion for compassionate release is properly before the Court. *See United States v. Alam*, 960 F.3d 831 (6th Cir. 2020) (holding that a defendant seeking compassionate release must exhaust his administrative remedies with the BOP before filing his own motion). To demonstrate exhaustion in the compassionate-release context, a defendant must have "fully exhausted all administrative rights to appeal" the BOP's decision not to move for compassionate release on his behalf, or waited for the lapse of 30 days from the date the facility's warden received his request asking the BOP to move for compassionate release, whichever comes first. 18 U.S.C. § 3582(c)(1)(A).

In his motion, Mitchell explains that "the Warden of FCI Terre Haute denied Petitioner's request for compassionate release and home confinement in light of the Covid-19 pandemic." ECF No. 64, PageID.605. Accordingly, it appears from the record that Mitchell has properly exhausted his administrative remedies. The government agrees, acknowledging that "Mitchell has properly exhausted his administrative remedies and the Court may rule on the motion on the merits." ECF No. 70, PageID.646.

### B. Mitchell has demonstrated extraordinary and compelling reasons warranting a sentence reduction.

In light of Covid-19's rapid spread among prison populations, Mitchell's Type 2 diabetes and hypertension present "extraordinary and compelling reasons" warranting compassionate release. The government does not dispute that Mitchell has demonstrated "extraordinary and compelling reasons" warranting release. And the Court further finds that reducing Mitchell's sentence to time served would be consistent with the sentencing factors contained in § 3553(a), and applicable policy statements. For these reasons, the Court will grant Mitchell compassionate release.

The term "extraordinary and compelling reasons" has been defined by the United States Sentencing Commission. *See* U.S.S.G. § 1B1.13, comm. n.1.1 It encompasses four categories: the defendant's medical condition, age, family circumstances, and a catchall of "other reasons." *Id.* Relevant medical considerations described by the Sentencing Commission include whether the defendant is suffering from terminal illness or "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at comm. n.1(A). The medical conditions referenced in § 1B1.13, comm. n.1 have not been updated since 2018 and accordingly are not tailored to the current Covid-19 pandemic.

Concerning age, the Sentencing Commission directs courts and the BOP to consider whether the defendant is over 65, is deteriorating "because of the aging process," or has served "at least 10 years or 75 percent" of his or her term of imprisonment." U.S.S.G. § 1B113, comm. n.1(B).

At least one court in this district has found that the Covid-19 pandemic "as applied" to a defendant seeking compassionate release "presents compelling and extraordinary reasons for" sentence modification. *United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *5 (E.D. Mich. May 15, 2020) (Hood, C.J.). In that case, Chief Judge Hood reasoned that the defendant's "serious" health condition, combined with the impossibility of practicing social-distancing in prison, diminished his ability to "provide self-care" within the prison facility—a concern articulated in the Sentencing Guidelines. *Id.* at *5 (quoting U.S.S.G. § 1B1.13, comm. n.1(B)). Although the government urges that "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," it cites only out-of-circuit authority in support of that position. ECF No. 70, PageID.656 (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

Mitchell's preexisting medical conditions of Type 2 diabetes and hypertension, in tandem with the proliferation of Covid-19 in cramped BOP facilities, including FCI Terre Haute, make him especially vulnerable to suffering serious illness or death as a result of the disease.

Although these health problems may not fall within the category of "a serious physical or medical condition" during ordinary times, in the context of the Covid-19 pandemic the CDC has identified Type 2 diabetes as a serious comorbidity and acknowledges that hypertension may also serve as a risk factor. During a dangerous pandemic, Mitchell's diabetes and hypertension "substantially diminish" his ability "to provide selfcare within the environment of a correctional facility." U.S.S.G. § 1B113, comm. n.1(a).

If Mitchell were to contract the virus, it is beyond the ability of this Court to assess—as the Guidelines instruct—whether Mitchell would be "expected to recover." *Id.* at comm. n.1(A). As another court in this district put it, although "COVID-19 alone cannot allow the release of all prisoners who request relief . . . a defendant who meets the medical conditions category combined with a valid threat of contracting COVID-19 may qualify for relief." *Pomante*, 2020 WL 2513095, at *6. Indeed, several courts have found that, for high-risk individuals, the conditions of confinement in prison satisfy the Commission's definition of "extraordinary and compelling reasons for release" because those conditions make it impossible for vulnerable individuals to protect themselves from contracting the highly contagious virus. *See, e.g., United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *5 (E.D. Mich. May 7, 2020) (collecting cases). Moreover, the government itself expressly acknowledges that "Mitchell's heightened risk from Covid-19 based on

9

his Type II Diabetes Mellitus qualifies as an 'extraordinary and compelling reason [ ]' for release under § 1B1.13(1)(A) & cmt. n.1(A)," even though the government maintains that Mitchell is ineligible for compassionate release because he is a danger to the community, and that compassionate release is not warranted under the § 3553(a) factors. ECF No. 70, PageID.644.

Although FCI Terre Haute only has three active cases among its inmate population as of the date of this Order, the fact that the BOP has stated previously that it conducts tests on prisoners only if they display symptoms of the virus suggests that number may in reality be much higher. In addition to the existence of Covid-19 cases at FCI Terre Haute, the Court acknowledges that conditions of confinement in all BOP facilities, where prisoners share small cells and use the same bathrooms and shower facilities, make them generally "more potentially conducive to the transmission of COVID-19 than elsewhere." *Haney*, 2020 WL 1821988, at *6.

### C. Reducing Mitchell's sentence would be consistent with the § 3553 sentencing factors

Having found that "extraordinary and compelling reasons" justify reducing Mitchell's sentence to time served, the Court must also consider whether doing so would be consistent with the sentencing factors contained in 18 U.S.C. § 3553(a). Additionally, the Court must take into account whether Mitchell would present a danger to the safety of any

other person or to the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2). Upon careful consideration of these factors, the Court concludes that Mitchell's sentence can be reduced without in any way undermining the sentencing factors or creating a danger.

Among those sentencing factors are the nature and circumstances of the underlying offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, whether the sentence will serve deterrence goals, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). Mitchell's conviction is for possession with intent to distribute more than 28 grams of cocaine base. of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). ECF No. 23, PageID.50. As part of the plea agreement, he acknowledged that law enforcement officers had discovered two bags of cocaine base on his person during a 2012 traffic stop in Flint, Michigan. ECF No. 23, PageID.50. Officers then conducted a search of Mitchell's residence based on the consent of his girlfriend and found approximately 132 grams of cocaine base, which Mitchell took responsibility for possessing with the intent to distribute. *Id.* at PageID.50–51.

Although Mitchell has a significant criminal history, it is relatively old, predominantly nonviolent and devoid of any evidence that Mitchell has used physical force against others in the past or may be likely to do so in the future. Mitchell picked up his first state-court convictions when he was 22 years old, for using marijuana and providing false information

to the police. PSR, p. 6. The next year, he was convicted on two occasions for driving with a suspended license. PSR, p. 7. At age 24, Mitchell was convicted of possessing marijuana with intent to deliver, resulting in a period of probation. PSR, p. 7. Within the next two years, he was twice again convicted of driving with a suspended license as well as for fleeing and eluding the police in the third degree. PSR, p. 8. Between his mid-twenties and mid-thirties, Mitchell was again convicted of possessing marijuana, and several more times for driving with a suspended license, as well as for gambling or disorderly conduct. PSR, p. 8. None of these convictions involved causing bodily harm to others. Perhaps for that reason, Mitchell received comparatively minor probationary sentences. PSR, p. 9.

In this case, however, Mitchell received a sentence of 108 months—a substantial prison term by any measure—especially considering it was Mitchell's first custodial sentence. At this point, Mitchell has served all but one year of that sentence. The time Mitchell has already spent in prison creates a significant deterrent that will prevent him (and potentially others) from engaging in future criminal activity. Certainly, the more than six years Mitchell has already spent in prison for the instant offense does not minimize the serious nature of his drug offense. And the Court observes no risk of creating unwarranted sentencing disparities by reducing Mitchell's sentence given that the time he has

12

already served is within the Guidelines range for individuals who have committed similar crimes, and who have similar criminal histories.

The Guidelines further specify that a sentence reduction is only appropriate "if the defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13(2). Mitchell's motion did not specifically address dangerousness, but the record contains no evidence suggesting that he would pose any particular danger if released approximately one year early. To the contrary, Mitchell's prison disciplinary records indicate he is receiving good-conduct credit towards an early release date and has not received any write-ups for violent conduct during the six years he has been incarcerated. ECF No. 69-2, PageID.636; ECF No. 69-3 (BOP Inmate Data), PageID.637 (BOP Inmate Disciplinary Data). The BOP, as part of its prisoner history review mandated by the First Step Act, has also identified him as posing a low risk of recidivism. ECF No. 69-4, PageID.638. Additionally, during his incarceration Mitchell has taken advantage of available educational opportunities to earn his General Educational Development diploma and to study plumbing, HVAC systems, small business skills, construction management, parenting, nutrition, and music theory, among other topics. ECF No. 69-5 (BOP Inmate Education Data).

Although drug-trafficking is an inherently dangerous crime and causes great harm to the communities where it takes place, the Court

13

must focus on the individual defendant's situation. Here, Mitchell's criminal history is largely non-violent and there is no indication of any tendency to engage in force or violence against others. The term of incarceration Mitchell has served is an adequate punishment and deterrent for the type of drug trafficking he engaged in. There is no evidence of potential danger to the community that would preclude reducing Mitchell's sentence to time served.

### D. The Court lacks jurisdiction to transfer Mitchell to home confinement under the CARES Act.

Briefly, because the case does not turn on this issue, the Court reiterates that it has no authority to transfer Mitchell (or any other prisoner) to home confinement. The exclusive authority to determine a prisoner's place of incarceration—including home confinement—rests with the BOP, not with the sentencing court. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . ."). Such a decision "is not reviewable by any court." 18 U.S.C. § 3621(b).

The CARES Act does not authorize courts to transfer a prisoner to home confinement for the remainder of his sentence. *See United States v. Gray*, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020). Instead, courts in this district have recognized that under the CARES Act the authority to transfer a prisoner to home confinement remains "squarely allocated" to the BOP. *See Miller v. United States*,

No.16-20222-1, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020) (Tarnow, J.); *United States v. Doshi*, No. 13-cr-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) (same). *See also United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("The Court does not have authority to dictate placements to the BOP."). The CARES Act therefore does not alter the fact that this Court lacks jurisdiction to transfer Mitchell to home confinement.

## CONCLUSION

For these reasons, as well as reasons stated in open court during the hearing on this matter that took place on July 14, 2020, Mitchell's motion for compassionate release (ECF No. 64) is **GRANTED**. His sentence will be reduced to time served and he will be released from BOP custody following completion of a 14-day quarantine. Upon his release from custody, Mitchell will begin his 4-year term of supervised release, as outlined by the April 16, 2014 judgment (ECF No. 25). After the Court raised questions during the hearing about Mitchell's plans following his release from custody, defense counsel submitted a release plan that provided information about where Mitchell plans to reside, and how he intends to support himself financially.

SO ORDERED.

Dated: July 14, 2020         s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE